Good morning. May it please the Court, my name is Douglas Nelson on behalf of the petitioner. At the outset, I want to announce that on July 17, 2008, the respondent did file a motion to reopen with the Board of Immigration Appeals. That motion was based upon the Iraqi Refugee Crisis Act, which allows Iraqis to reopen their case if they were denied asylum after March 2003. If the judge denied asylum solely or in part because of changed country conditions. In the second to the last paragraph of the immigration judge's decision, she clearly states that the petitioner no longer has a well-founded fear of persecution because of regime change. We've also added to that motion to reopen new material evidence to prove that there are changed conditions in the country. So we have two bases in order to reopen, but as of yet, as of an hour ago, we still do not have a decision on that motion to reopen from the Board. I filed 20 such motions, 11 so far have been approved, none have been denied. But in prudence, I thought it would be best to still appear today because I can never predict when or whether or how the Board is going to decide a motion to reopen. Do you want us to decide this case then or take it under submission? We want you to decide this case because again... We want to win, but do you want us to decide it if you're going to lose? There you go, Your Honor. Because of course, I can't predict what the Board is going to do in this case. And as you've seen many Board decisions, they are or can be unpredictable. Nevertheless, in this case, the respondent has a meritorious claim to asylum. The immigration judge's greatest mistake is summed up by her conclusion that she made after she described the two Muslim men who targeted my client and forced him out of business based on his Christianity. All right, well wait, here, the Board, the IJ found him incredible. Correct. But the Board didn't adopt that, correct? That's correct, Your Honor. So we have to deem Dyko credible for purposes of determining this, correct? That's correct, Your Honor. All right, because the Board did not adopt that determination and decided it on what on the ground that insofar as he determined that the respondent failed to determine, demonstrate persecution on account of any one of the five protected grounds? Correct. Okay, so for purposes of deciding this right now, we have to assume he's credible. And what does that mean in terms of the facts that we're dealing with? Very good, Your Honor. In fact, the government hasn't argued that he's not credible. They apparently read the decisions I do. The Board could have easily said we adopt the entire decision. But they limited their findings, saying we only adopt insofar as he failed to establish a nexus. And that's what we're arguing today is a nexus between the five grounds of eligibility and the torture this person suffered. Well, he says he's Christian and that he didn't have friends in high places. He also refused to join the Ba'ath Party on numerous occasions. And he was basically accused of disloyalty for failing to show loyalty to the government. And he was also accused of being a foreign spy or operator. They accused him of representing or spying on behalf of the Israeli government or other foreign opposition groups. But the incidents that occurred in which he's basing the persecution claim seem to relate to this tank incident where the tank caught fire. And what the IJ found was that that related to scapegoating him. And there really wasn't any evidence showing that it was on account of one of these five grounds. Now, we have to ask, why was he scapegoated, though? It's interesting to note that of all the persons arrested for this tank fire, the only one who was punished for it was the Christian. Now, the government argues, and you've mentioned that this may be because the other person had friends in high places. But it's interesting. When he was being tortured, electrocuted, they didn't say to him, we're doing this because of the tank fire, because you burned a military property. They said, you're a filthy Christian. You work with the Israelis. In fact, they said, you refuse to sign a confession because the Israelis taught you tactics on how to avoid signing confessions. But, of course, we're not looking as to whether there's some evidence that supports the petitioner's theory of the case. We're just looking as to why, whether there's substantial evidence supporting the IJ's conclusion. And the IJ pointed at the evidence, saying, you know, it was scapegoating. There was a trial. The judge said, we've got ten witnesses against you. So there was certainly evidence in the record supporting the IJ's conclusion that it wasn't on account of a protected grant. I respectfully disagree, because when you look at why he was scapegoated, and the fact that they invoked his religion and an imputed political opinion to him repeatedly, I think that we can only conclude that the measure of torture, or even the reason for the torture, was based largely on his religion or politics. How is the IJ's conclusion related? Because the IJ found him not credible. Correct. Correct? And then the IJ also found it wasn't on account of a protected grant. So then, but since now we have to presume him credible, how does that factor in to the analysis of whether it was on account of? Well, you have to adopt his claim as true. Simply put, the negative credibility finding doesn't have any impact or influence on your decision at this juncture, because it was clearly excluded by the board in its decision. As I said before, they could have easily said, we adopt the entire decision, but they specifically said, no. We only adopt it insofar as to the question of nexus, whether the torture was on account of one of the five grounds of eligibility. Yes. Let me ask you about the claim of well-founded fear of future persecution. So his argument, as I understand it, was that this tank incident and this history of persecution in Iraq, and that he was then, notwithstanding the regime change, the same thing would occur in the future. Now, did he make this argument to the BIA in his appeal? No, not forcefully. He had different counsel at the time, but that doesn't allow the board to ignore the law, which is, if you've established past persecution, it's presumed that you have a well-founded fear of future persecution, unless the government bears its burden and proves that it's now safe to return to that country. But who was it that was persecuting him? Wasn't it Saddam Hussein? Correct. Well, Saddam Hussein isn't going to persecute anybody. That's correct. So can't he even take judicial notice of that? But that's not the standard. The standard is, once you've established past persecution, the government bears the burden of bringing evidence that it would be safe for the petitioner to return. And given the circumstances in Iraq today, in particular, the harm that the Christian community is suffering, resulting in more than half the Christian population fleeing the country, it could never meet that burden. How does this work, though? Your client's almost like a clean, sentenced prisoner, though, right? What was the reason for him being sentenced? Well, I know, but if he goes back, does he have to go to prison? Or what happens if he goes back? I don't know how the new Iraqi government would treat him, but he not only fears return because of the Iraqi government, but because of a terrorist insurgency that is particularly targeting Christians. And that evidence was presented in our motion to reopen, and hopefully we'll have a decision on that soon. But that is evidence outside of the record. We have a very, very strong case in that regard. But if the board were to choose to not grant that motion to reopen, it's up to this court to decide whether there exists a nexus between the harm and one of the five grounds. And I think it's very important, as I began my argument, to show that the judge said that this appears to have been an isolated incident when she referred to the Muslims forcing them out of business. We have here a pattern and practice that this person has endured for many, many years of both the government discriminating, harming, and then persecuting them on account of his religion and on account of a political opinion. We also have a pattern and practice of the Arab Muslim majority population discriminating and harming him on account of his religion. So your argument would apply to every Christian who would come here from Iraq. If your argument holds up, then anybody would just have to show they're a Christian and they would be entitled to asylum. I do these cases every week, and as a practical matter, all the San Diego immigration judges agree with what you just said. Merely establishing that you're a Christian is sufficient in order to win a case today. In fact, I had a case which was sustained. The negative credibility finding was sustained by the Ninth Circuit. On Monday, I presented that case to a San Diego immigration judge, in my opinion, a judge I clerked for in the most conservative center on the bench, who nevertheless agreed that if he merely establishes he's Christian, then his hands are tied and he has to grant asylum. How many Christians do you think there are in Iraq? Before the war, there were estimates of 800,000 to 1.2 million. Currently, the U.S. Department of State estimates, I'm sorry, as of two years ago, they estimated it had been cut in half. So you think we have room for them? We have 60,000 Calvians in El Cajon, California, so we have plenty. But I assume my time is up. All right. Does anyone else on the panel have any questions? All right. Thank you for your argument. Thank you. Good morning, Your Honors. Good morning. I'm David Shore for the Attorney General in this matter. In this asylum case, the petitioner conceded that removability and he had a full and fair opportunity to present his claims. The board affirmed the immigration judge's finding that he failed to establish a nexus between his past experience and a protected ground under the INA without reaching the immigration judge's alternative findings. Petitioner's claims center on one episode when he was accused of burning a tank. Petitioner said that he was the last to drive this tank, which was a disabled tank, and that it caught fire, and that in the subsequent investigation, numerous individuals from Petitioner's unit were detained and interrogated. And Petitioner speculates that the reason that he was ultimately the one who was blamed for this incident was on account of his religion. He didn't mention anything regarding political. Let me ask you this. What I'm having a little trouble unraveling is, you know, on the one hand, you know, you could look at this and say, you know, he's just a criminal or a terrorist or whatever that got sentenced to prison and escapes and he wants to stay here. And that's easy enough to get there when you have the adverse credibility supported. But basically, now we have to assume that things that he said before the IJ, we have to assume those to be true because the BIA didn't, you know, didn't find the adverse credibility. They didn't adopt that part in the reasoning. So he does talk about in the testimony, he does talk about that it's, you know, that it's because he's Christian or they say certain things in the interrogation. So now that we have to presume him true, why isn't there something there? Why doesn't that, you know, the on account of, if you don't believe him, is easy. Sure. But if you have to take certain things as credible, he does talk about that. What do I do with that? Your Honor, he never indicated whether before he was the one who was ultimately charged with this crime, he never indicated whether these individuals who were accusing him, whether they knew about his religion beforehand. He never indicated that. And he also indicated he provided a different reason rather than his religion for the reason that he was the one that was ultimately blamed for this offense, which is that everyone else who was accused was related to, in his words, very high-ranking senior officials who obtained their exoneration. And Petitioner alleged that during his 40-day period of detention and the interrogations that he went through, he alleged that twice his religion was mentioned by the interrogator. And he also, in his testimony, indicates that he was the one who actually brought up his religion on one of the occasions when he said something to the effect of, sir, I'm just a Christian who was blamed for this. So here we just have these two mentions of two interrogators. And I'd also like to note that the judge that ultimately convicted the Petitioner noted that 10 different witnesses had testified against him. And we have two interrogators who mentioned religion allegedly, but we don't have anything from the 10 witnesses who testified against him and who, again, had these high-ranking relatives who secured their release. And it is unfortunate that Petitioner would have been scapegoated, but the evidence doesn't compel the conclusion that he was scapegoated because he was a Christian. Whether his religion was the reason for past persecution or not, how do you account for Mr. Nelson's statement that, in his experience, every Christian is granted asylum? Your Honor, again, these are extra-record contentions which rely on extra-record evidence, which isn't . . . I'm just trying to figure out what's really happening here. Your Honor, this Court has rejected undifferentiated claims of future persecution, which is what that would be. Now, the Board would have to say in the first instance whether conditions are bad such that the Petitioner here merits asylum in light of current conditions, and there is the pending motion to reopen in which the Board can decide that. With regard to Petitioner's other claims regarding discrimination and harassment in the past, he concedes in his brief that these themselves don't rise to the level of persecution. He alleged that he failed in school because he didn't join the Ba'ath Party and that the military transferred him to the front lines during the first Gulf War because he didn't join the Ba'ath Party and that he was forced to relocate his business because of some local individuals who took over, quote-unquote, by force, his business. And he's expressly waived in his brief the allegation that these are persecution. So absent the episode with the tank, which the evidence doesn't compel that the individuals that blamed him did so because of his religion, or even that the ten witnesses were even aware of his religion when it was only two interrogators and he had brought up his religion, at least on one occasion. And in addition, with regard to future persecution, fear of ordinary criminal prosecution is not fear of persecution. The judge that convicted the petitioner, he said, wanted to believe him and said, I'd like to believe you, but in light of the weight of the evidence, ten witnesses have testified against you. I can't believe that you were scapegoated. If hypothetically we didn't believe that the BIA's reason that if that wasn't supported and it compelled another result, then what happens? This court, in that case, would have to remand so that the board could address the alternative findings of the immigration judge, the alternatives in the first instance, because the board did not reach those when it first decided the petitioner's appeal. All right. And if we accept your position that it is supported, then what next? Well, then the board still has to decide the pending motion to reopen. And the Iraqi Crisis Refugee Act, I don't believe that the board has issued a presidential decision interpreting that act. And the act seems to encourage motions to reopen if the denial was in part based on changed country conditions. And petitioner, based on the relevant date, seems to qualify under the act. But, again, an individual can seek reopening irrespective of the act based on changed country conditions in any event. And the board would have to address this in the first instance. But for this petition for review and this order of removal, the court's decision in this case would not prejudice the board from deciding the motion to reopen in any way. And because substantial evidence supports the board's decision, the court should deny the petition for review. Thank you, Your Honor. Unless there are any questions from the panel. There do not appear to be any. Thank you for your argument. Thank you. Thank you, Your Honor. Having this matter will now stand submitted. The next matter on calendar is Timothy Hawk v. J.P. Morgan Chase.
judges: Callahan, Ikuta, Shubb